IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:20-CV-56-RJ

| | |
|---|---|
| JOYCE ELEANOR LANKTON, | |
| Plaintiff/Claimant, | |
| v. | O R D E R |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -28] pursuant to Fed. R. Civ. P. 12(c). Claimant Joyce Eleanor Lankton ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the matter is remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 16, 2015, alleging disability beginning June 6, 2015. (R. 125, 243–44). Her claim was denied initially and upon reconsideration. (R. 110–21). A hearing before an Administrative Law Judge ("ALJ") was held on January 2, 2018, at which Claimant, represented by counsel; two witnesses;

and a vocational expert ("VE") appeared and testified. (R. 76–109). On April 27, 2018, the ALJ issued a decision denying Claimant's request for benefits. (R. 122–39). On March 22, 2019, the Appeals Council granted Claimant's request for review based on additional evidence submitted to the Appeals Council, vacated the ALJ's decision, and remanded the case to an ALJ for further proceedings. (R. 140–43).

On October 28, 2019, a different ALJ held a hearing at which Claimant, represented by counsel; a witness; and a VE appeared and testified. (R. 34–75). On December 2, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 11–33). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76

2

F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.*

3

§ 404.1520a(e)(3).

In this case, Claimant alleges the ALJ committed the following errors: (1) failing to find Claimant's impairments met or equaled Listing 1.04A, (2) failing to properly analyze Claimant's statement regarding her subjective symptoms, (3) finding Claimant was capable of performing a reduced range of light work, (4) failing to properly apply the Grid Rules, and (5) failing to include all of Claimant's limitations in the hypothetical to the VE. Pl.'s Mem. [DE-24] at 11–34.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment from the alleged onset date of June 6, 2015 through the date last insured of September 30, 2018. (R. 16). Next, the ALJ determined Claimant had the severe impairments of bilateral first carpometacarpal ("CMC") joint osteoarthritis, s/p bilateral arthroplasty, and tendon transfer; degenerative disc disease ("DDD"), lumbar spine; and obesity, and the nonsevere impairments of gastroesophageal reflux disease; aspiration pneumonia; allergic rhinitis; hiatal hernia; hypothyroidism; tension headache; sore throat; cough; sore on tongue; shingles; upper respiratory infection; ganglion cyst; labral tear, right shoulder; esophagitis; gastritis; dysphagia; hand tremor; ketonuria; pharyngitis; diarrhea; carpal tunnel syndrome; abscessed tooth; hyperlipidemia; hypereosinophilic syndrome; finger laceration; tension headache; affective disorder, variously diagnosed as major depression and bipolar disorder; anxiety disorder; cannabis use disorder; alcohol use disorder; and nicotine use disorder. (R. 16–17). The ALJ also found Claimant did not have the medically determinable impairments of primary headache disorder or fibromyalgia. (R. 19–20). However, at step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of

4

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments resulted in mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> frequently push/pull with both upper extremities; never climb ladders/ropes/ scaffolds; occasionally climb ramps and stairs; frequently stoop, balance, kneel, crouch; occasionally crawl; frequently handle and finger with both upper extremities; must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery.

(R. 21–26). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence. (R. 22). At step four, the ALJ concluded Claimant could perform the requirements of her past relevant work as a cake decorator, medical assistant, and pharmacy technician. (R. 26–27). Alternatively, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27–29).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

## V. DISCUSSION

### A. Listing 1.04A

Claimant contends the ALJ erred by finding her disc herniations at L4-L5 and L5-S1, characterized by lumbar stenosis and nerve root compression, do not meet or equal Listing 1.04A; specifically, Claimant argues that the ALJ overlooked an absence of reflex in the examination findings and all other requirements of Listing 1.04A were met. Pl.'s Mem. [DE-24] at 23–27. Defendant concedes that some of the signs of Listing 1.04A were present, but argues that sensory and reflex exams were normal and there was no muscle atrophy, so Claimant cannot meet the burden of demonstrating the listing was met. Def.'s Mem. [DE-29] at 7–9.

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even if an impairment does not meet the listing criteria, it may still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). The burden of demonstrating that an impairment meets or equals a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

When "there is at least conflicting evidence in the record" as to whether a claimant satisfies a listing, the ALJ must explain her determination that the claimant's impairment does not meet or exceed the listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The ALJ cannot "summarily conclude" that a listing is not satisfied because "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* For example, in *Radford* the record showed "limited motion of the spine on at least

6

four occasions, positive straight leg raises at least five times, and sensory reflex loss on at least three occasions," but it also showed "no weakness, sensory loss, or limitation of motion during some examinations." *Id.* at 296. The court held that there was conflicting evidence requiring a detailed explanation from the ALJ. *Id.*

To satisfy Listing 1.04A, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord" with the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. § 404, subpt. P, app. 1, § 1.04A. The claimant "need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition." *Radford*, 734 F.3d at 294. "Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity." *Id.* The Commissioner has recognized that "abnormal physical findings may be intermittent," but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms "over a period of time," as evidenced by "a record of ongoing management and evaluation." *Id.* (quoting 20 C.F.R. pt. 404, subpt P, app. 1, § 1.00D). "To require proximity of findings would read a new requirement into the listing that is unsupported by the text, structure, medical practice, or common sense." *Id.*

At step three the ALJ determined Claimant's spinal disorder did not satisfy Listing 1.04A, explaining as follows:

7

Listing 1.04, in accordance with *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) and AR 15- 1(4), was not met because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, positive straight-leg raising or; B. Spinal arachnoiditis or; C. Lumbar spinal stenosis resulting in pseudoclaudication. Exhibit 9F does reveal *some* of the findings required by Listing 1.04A, specifically on examination there the claimant had limited range of motion, positive straight leg raising, and slight muscle weakness. However, sensory examination and reflexes were normal and the claimant exhibited no atrophy. No surgical intervention was deemed warranted, suggesting that the claimant's radicular symptoms were not so concerning. In subsequent records in Exhibit 10F, no examinations betray any 1.04A findings and in Exhibit 12F, there are, again some, specifically, limited range of motion and positive straight leg raising, but none of the 1.04A findings are noted. Thus a review of the medical evidence of record reveals that the claimant did not exhibit all of the signs required of Listing 1.04A on any one examination, nor in several examinations viewed over time.

(R. 20–21).

The ALJ incorrectly found that there was no evidence of abnormal sensory or reflex examinations. (R. 21). On February 27, 2018, Claimant presented to Dr. Topham at Compass Rehabilitation for further evaluation of left lower extremity pain consistent with acute left lumbar radiculopathy, localized to the left buttock with radiation down the left lower extremity in the L4, L5, and SI distributions. (R. 725, 731). On examination, Claimant's patellar reflex was absent on the left, ankle clonus was absent, and deep tendon ankle reflex was absent on the left. (R. 726–27). On sensory examination for light touch in the left lower extremity, hypoesthesia in L5 and S1 distribution were noted. (R. 727). Claimant also demonstrated diminished muscle strength and a positive straight leg raise test on the left, and a February 8, 2018 MRI showed a disc bulge at L4-5 with encroachment on the descending left L5 nerve root in the lateral recess and a disc bulge at L5-S1 with super imposed left para central inferior directed disc extrusion about the descending left S1 nerve root in the lateral recess and mild foraminal narrowing at L4-5. (R. 727). While

8

Claimant had full but painful range of motion to 25 degrees on extension, on other occasions, for example on February 22, 2018, she demonstrated restricted range of motion on flexion, (R. 726, 730), and findings do not have to be present simultaneously, *Radford*, 734 F.3d at 294. Finally, the ALJ noted Claimant exhibited no atrophy, (R.21); however, the requirement is "motor loss" that can be demonstrated by "atrophy with associated muscle weakness or muscle weakness." 20 C.F.R. § 404, subpt. P, app. 1, § 1.04A (emphasis added). Claimant demonstrated muscle weakness on examination and, thus, atrophy was not required. *See Shoemaker v. Berryhill*, No. 7:18-CV-00116-FL, 2019 WL 4593427, at *7 (E.D.N.C. May 22, 2019) (finding a showing of atrophy was not required to satisfy Listing 1.04A because muscle weakness alone is sufficient to satisfy the listing), *report and recommendation adopted in part, rejected in part on other grounds sub nom. Shoemaker v. Saul*, 2019 WL 4580381 (E.D.N.C. Sept. 20, 2019).

Defendant repeats the ALJ's erroneous findings regarding Listing 1.04A and suggests other evidence demonstrates Claimant only required conservative treatment and did not pursue other measures. Def.'s Mem. [DE-29] at 7–9. The other evidence cited by Defendant is not relevant at step three because if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. 20 C.F.R. § 404.1520(d). The court also notes that Claimant lost her insurance during the time period to which Defendant refers, and Claimant stated she wanted to pursue further treatment from a neurosurgeon and pain management specialist for her worsening back pain once she obtained insurance or disability. (R. 807, 814); SSR 16-3p, 2016 WL 1119029, at *10 (March 16, 2016); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of patent purposes of the SSA to deny benefits to someone because he is too poor to obtain medical treatment that may help him"); *McKoy v. Saul*, No. 7:19-CV-223-FL, 2020 WL 8084961, at *9 (E.D.N.C. Nov. 22, 2020) ("citing McKoy's non-compliance, without

9

exploring the reasons underlying it, offers little in the way of substantial evidence to support ALJ Moldafsky's assessment"), *adopted by* 2021 WL 76956 (E.D.N.C. Jan. 8, 2021). Accordingly, this matter must be remanded for the ALJ to reconsider whether Claimant's impairments meet or equal Listing 1.04A.

### B. The RFC Assessment

Claimant contends the ALJ erred in formulating her RFC by failing to properly analyze her subjective statements regarding her symptoms, specifically focusing on her symptoms related to her back impairment and resulting pain, and by finding Claimant was capable of performing a reduced range of light work. Pl.'s Mem. [DE-24] at 27–33. Defendant contends the ALJ properly considered Claimant's subjective statements, and the RFC assessment is supported by substantial evidence. Def.'s Mem. [DE-29] at 10–22.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the

10

evidence to his conclusion").

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ summarized Claimant's hearing testimony as follows:

11

> The claimant testified that she is 5'7" and weighs 200 pounds. She is a smoker but smokes less than a pack of cigarettes daily. She maintains a driver's license. She lives with her husband, daughter, son, and 6 year-old grandson. She described back pain, prior to the DLI, that radiated into both legs and resulted in numbness and tingling. Due to this discomfort, she had a hard time with standing, sitting, and walking. According to the claimant, she attempted physical therapy, muscle relaxants, pain medication, and injections with minimal relief. She indicated that she moved from Michigan to North Carolina in April 2018 and since then, she has not had insurance. She now takes muscle relaxers and Motrin and performs stretches. The claimant also described a history of surgery to her left and right hands due to arthritis. Although she admitted some improvement, she indicated that she has reduced grip and pain with overuse. She estimated being able to sit 20-30 minutes and stand 20-30 minutes before having to change positions. She reported having to lie down 4 to 5 times during the day. She estimated being able to lift no more than 2-3 pounds. The claimant reported performing housework with frequent breaks. The claimant described daily headaches, including 4-5 debilitating, migraine-like headaches where she must stay in the best in a dark room each month.

(R. 22). The ALJ found that the Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

The ALJ then discussed Claimant's treatment records for her hand pain related to osteoarthritis for which she had two surgeries with good result, and her back pain related to degenerative disc disease, spondylosis, and radiculopathy for which she received epidural injections and medications. (R. 22–24). The ALJ explained his RFC assessment, in relevant part, as follows:

> The undersigned finds the claimant's lumbar DDD and obesity reasonably result in the limitation to light exertion, limited postural maneuvers, and restrictions on hazards adopted herein. While some of the signs of listing 1.04A, namely evidence of stenosis, limited range of motion, positive straight leg raising test, and very slight muscle weakness, are present, sensory exams and reflex exams were normal and there was no muscle atrophy. Gait was most often normal, she did not require use of an assistive device, and during consultative exam, the claimant had no difficulty getting on/off the examination table, no difficulty heel/toe walking, no difficulty squatting, and no difficulty standing 3 seconds on either foot. Only conservative

12

treatments such as physical therapy and injections were recommended, and the
record does not indicate that surgical intervention was warranted, which suggests
that radicular findings were not so grave as to require more invasive measures. The
claimant has proceeded with muscle relaxers and primary care since moving to
North Carolina, and the record does not indicate that she has sought out evaluation
by an orthopedic surgeon, rheumatologist, or neurosurgeon or that her back
condition has required emergency care. The more recent examinations in exhibit
10F do not betray any 1.04A findings, and the exams in 12F note the presence of,
again, limited range of motion and positive straight leg raising test but this time,
none of the other findings, so it cannot be said that her condition satisfies the criteria
of 1.04A. The claimant is obese. The undersigned thus takes judicial notice of SSR
19-2p, which recognizes that obesity can exertionally and nonexertionally limit an
individual. The undersigned concludes that the claimant's obesity contributes to her
functional limitations but does not result in limitations in excess of the residual
functional capacity stated herein.

(R. 24). The ALJ's decision in this regard is not supported by substantial evidence.

First, as explained above, the ALJ erroneously found that sensory exams and reflex exams were normal. Next, the consultative examination in which Claimant had no difficulty getting on/off the examination table, no difficulty heel/toe walking, no difficulty squatting, and no difficulty standing 3 seconds on either foot was conducted on May 12, 2016, when Claimant's chief complaints were arthritis primarily in her wrists, hands, and right shoulder, (R. 521), and well before Claimant's onset of low back pain in early 2018, when x-rays and an MRI indicated paracentral disc herniations at L4-L5 and L5-S1 with mild to moderate spinal canal stenosis and encroachment on the nerve root. (R. 727, 731–37). Defendant points to the ALJ's reference to Claimant's statements to the examiner regarding her ability to perform household chores and grocery shop. Def.'s Mem. [DE-29] at 13; (R. 23). Again, this was more than a year before the onset of Claimant's back pain due to bulging discs, and Claimant testified at the administrative hearing to requiring frequent breaks when performing activities such as washing dishes. (R. 52, 57–58, 62); *see Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 99 (4th Cir. 2020) ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent*

13

to which she can perform them.") (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Additionally, the ALJ's statement that "only conservative treatments such as physical therapy and injections were recommended, and the record does not indicate that surgical intervention was warranted, which suggests that radicular findings were not so grave as to require more invasive measures," is somewhat misleading. On February 22, 2018, Claimant had a neurosurgical consult with Dr. Abood, who determined her symptoms were consistent with acute left lumbar radiculopathy. (R. 729–31). Claimant had not yet received treatment, Claimant opted to attempt reducing her pain with physical therapy and lumbar injections, and Dr. Abood indicated he would see her again if her symptoms did not resolve. (R. 731). Claimant next saw Dr. Topham on February 27, 2018 for further consultation and to exhaust conservative treatments prior to exploring surgical options, and Dr. Topham administered epidural injections on March 5 and 19, which provided Claimant with temporary relief. (R. 719–28).

However, as the ALJ noted, Claimant subsequently moved in April 2018, from Michigan to North Carolina and lost her health insurance. (R. 22, 46–47). Claimant received medication refills from The Outer Banks Hospital Urgent Care on July 23, 2018, and had an appointment to establish care on September 5, 2018, at which it was noted Claimant had continued back pain that she was managing with muscle relaxers and Norco. (R. 785–88). At her December 6, 2018 appointment it was noted that Claimant was interested in physical therapy and injections once she obtained insurance, and on June 20, 2019, it was noted that Claimant's back pain continued to worsen and she was awaiting disability benefits so she could go to a neurosurgeon and pain management specialist. (R. 807, 814). Thus, the record indicates that physical therapy and injections were recommended prior to surgical intervention, not that surgical intervention was not warranted, and that due to Claimant's loss of health insurance, she was unable to pursue physical

14

therapy and injections, which does not suggest that her "radicular findings were not so grave as to require more invasive measures" as the ALJ concluded.

Finally, the ALJ stated that "more recent examinations in exhibit 10F do not betray any 1.04A findings, and the exams in 12F note the presence of, again, limited range of motion and positive straight leg raising test but this time, none of the other findings, so it cannot be said that her condition satisfies the criteria of 1.04A." (R. 24). The examinations reflected in Exhibit 10F from the Outer Banks Hospital Urgent Care Center appear cursory in contrast to the thorough and detailed examinations findings in Dr. Abood's and Dr. Topham's treatment notes, *compare* (R. 785–90), *with* (R. 725–31), and in Exhibit 12F, a musculoskeletal examination was noted only on one occasion, (R. 801–22). Additionally, the presence of 1.04A findings need not be simultaneous.

> A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity. As the Commissioner recognizes, "abnormal physical findings may be intermittent," but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms "over a period of time," as evidenced by "a record of ongoing management and evaluation." (App.Br.25) (quoting 20 C.F.R. Part 404, Subpart P, 1.00D). To require proximity of findings would read a new requirement into the listing that is unsupported by the text, structure, medical practice, or common sense, and we decline to do so.

*Radford*, 734 F.3d at 294.

The court cannot trace the ALJ's reasoning in finding Claimant's statements regarding her symptoms and limitations that result from her bulging discs inconsistent with other evidence in the record, because the reasons given by the ALJ are not supported by the evidence cited. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (finding reversible error where the ALJ cited evidence he appeared to believe discredited the claimant's testimony regarding his symptoms but "failed to 'build an accurate and logical bridge from the evidence to his conclusion' that [the claimant's]

15

testimony was not credible.") (quoting *Clifford*, 227 F.3d at 872). On remand the ALJ should better explain how he evaluated Claimant's statements regarding her symptoms and limitations and reconsider Claimant's RFC.

### C. The Grid Rules, and the Hypothetical to the VE

Claimant contends the ALJ erred in failing to apply the Grid Rule 201.14 and in failing to include all of Claimant's limitations in the hypothetical to the VE. Pl.'s Mem. [DE-24] at 27, 34. Both issues may be impacted by the ALJ's reconsideration of Claimant's RFC. Accordingly, the ALJ should reconsider the applicability of Grid Rule 201.14 and the hypothetical posed to the VE, as necessary, on remand. The court expresses no opinion on the outcome of the claim on remand.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-23] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-28] is DENIED, and the case is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this the 17th day of March, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge